UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK



Alvin Rogers,

                Plaintiff,

          –v–

Fashion Institute of Technology, Mario Federici,
and Henry Welt,

                Defendants.

14-cv-6420 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

     Before the Court is the Defendants' motion to dismiss the Plaintiff's First Amended

Complaint. *See* Dkt. No. 50; Dkt. No. 51 (hereafter "Mot. to Dism."); *see also* Dkt. No. 67

(hereafter "Reply"). In his First Amended Complaint (hereafter "Amended Complaint" or "Am.

Compl."), Plaintiff Alvin Rogers, *pro se*, a part-time adjunct professor in the Fashion Institute of

Technology's production management department, alleges that Defendants, Fashion Institute of

Technology ("FIT"), Mario Federici, the chair of FIT's production management department, and

Henry Welt, the acting chair of FIT's entrepreneurship department, violated Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"),

the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the

New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–101 *et seq*, in

connection with the Plaintiff's employment at FIT.  Defendants move to dismiss the Amended

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   For the reasons

that follow, the motion is DENIED in part and GRANTED in part.

## I.     Background

### A. The Original Complaint and the First Motion to Dismiss

On August 8, 2014, the Plaintiff filed his first Complaint in this case.  *See* Dkt. No. 1

(hereafter "Complaint" or "Compl.").  On February 26, 2016, Judge Torres, to whom the case

was initially assigned, dismissed that Complaint without prejudice for failure to state a claim.

*See generally Rogers v. Fashion Inst. of Tech.*, No. 14 CIV. 6420 (AT), 2016 WL 889590

(S.D.N.Y. Feb. 26, 2016).  Because the Plaintiff's Amended Complaint incorporates almost all of

the allegations in the original Complaint verbatim (though adds new allegations), and because

Judge Torres's decision is law of the case,[1] the Court begins by describing the allegations in the

Plaintiff's original Complaint as well as the holdings of Judge Torres's prior decision.

### 1.  The First Complaint

In his original Complaint, as in the Amended Complaint, the Plaintiff alleged as follows.  On

a motion to dismiss, the Court assumes these allegations to be true.  *See Carter v. HealthPort*

*Techs., LLC*, 822 F.3d 47, 52 (2d Cir. 2016).

---

[1] *See Bergerson v. N.Y. St. Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 288–89 (2d
Cir. 2011) ("A district court may revisit [prior interlocutory] decisions but with the caveat that 'where litigants have
once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for
it again.'" (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d
147, 167 (2d Cir. 2003)).

In August 2001, Plaintiff, an African American, was hired to be a part-time adjunct professor in FIT's production management department. Am. Compl. ¶¶ 8, 20.[2]  Throughout his time at FIT, Plaintiff alleges he has been subjected to various forms of inequitable treatment on the basis of his race, primarily via the actions of the chairman of his department, Mario Federici. *Id.* ¶¶ 2, 10.  According to Plaintiff, this treatment began in 2003, when he was placed on probation by Federici as a result of low student evaluations. *Id.* ¶ 30.  This was, according to the Plaintiff, contrary to the practice in the department, which was to have the dean place instructors on probation for low student evaluations following an investigation. *See id.*  Additionally, instructors were typically offered career development, rather than probation, when they received such evaluations. *Id.*  Plaintiff claims that similarly situated white instructors were not unilaterally placed on probation by Mr. Federici. *Id.* at ¶ 32.  When Plaintiff complained of this practice to administrators at FIT, he was told that Federici, as department chair, could "do whatever he wants." *Id.* ¶ 29.

In early 2004, Plaintiff applied for a full-time position in the production management department. *Id.* ¶ 33.  Plaintiff claims that although he was qualified for the job, Federici did not interview him, and that Frederici instead hired a white applicant who Plaintiff alleges was both less qualified and did not hold a bachelor's degree, a credential that was purportedly listed, under the job description, as required for the position. *Id.*  Despite being passed over for the available full-time job, Plaintiff became eligible to be considered for Certificate of Continuous Employment ("CCE") tenure at FIT in the fall of 2004. *Id.* ¶¶ 27, 34.  Plaintiff claims that, when considering an instructor for such tenure, FIT does not require current faculty members to reprove qualifications they needed to show when they were first hired. *Id.* ¶ 35.  Nevertheless,

---

[2] Because the allegations in the original Complaint appear near-verbatim in the Amended Complaint, the Court cites to the Amended Complaint for ease of reference.

despite this purported custom and practice, Federici informed Plaintiff that he would be fired unless he submitted proof of requisite industry experience. *Id.* ¶ 34. Plaintiff complied with Federici's request. *Id.* ¶ 36. By letter delivered on or around January 11, 2005, Federici nevertheless informed Plaintiff that he had been denied tenure and terminated from the production management department. *Id.* ¶¶ 37–38. Federici told Plaintiff that human resources had determined Plaintiff was not qualified for the position. *Id.* ¶ 37. However, the day after, when Plaintiff spoke with the human resources, he was told that they had concluded the opposite, "but that Federici had unilaterally altered the letter." *Id.* ¶ 38. On January 25, 2005, FIT's vice president of academic affairs directed Federici to reinstate Plaintiff. *Id.* ¶ 39. Following reinstatement, FIT's president approved Plaintiff for CCE tenure. *Id.* ¶ 41. Although Federici's actions purportedly violated provisions of the collective bargaining agreement, he was never reprimanded. *Id.* ¶ 40.

Later that year, Plaintiff decided to apply for a new full-time position in production management. *Id.* ¶ 42. When Plaintiff indicated his intention to do so to Federici, however, Federici advised him that he should not bother because he was not qualified. *Id.* The position went to a white faculty member who Plaintiff claims did not possess the requisite computer skills, despite the fact that the job description required qualification in both computers and production. *Id.*

Plaintiff alleges that other professors in the production management department also complained of disparate treatment on the basis of their race, including Joyce Early, an African–American full-time faculty member. *Id.* ¶ 43. Ms. Early purportedly sent a letter to human resources in 2006 criticizing Federici's hiring decisions and corroborating Plaintiff's claim that Federici hired a white applicant without a bachelor's degree for a full-time position despite the

presence of qualified non-white candidates. *Id.*  Nevertheless, Plaintiff was again passed over for a full-time position in April 2008, and the position went to a white candidate who again lacked the requisite experience. *Id.* ¶ 44.  Shortly thereafter, Plaintiff sent letters to the hiring committee, which included Federici, as well as human resources, asking why he was not hired for the position. *Id.* ¶ 45.  Though Plaintiff did not receive a response, he was, a month later, barred by Federici from teaching "a basic course in manufacture (sic)," which he had taught before but for which he received low student evaluation scores. *Id.* ¶ 46.  Plaintiff claims that normal practice at FIT, when a faculty-member receives low student scores the first time he teaches a course, would be to offer him training or development. *Id.* ¶¶ 27, 46.

In 2010, Plaintiff began complaining about racially discriminatory employment practices at faculty meetings. *Id.* ¶ 47.  He questioned what he argued was favoritism shown to white professors with low student evaluation scores, whom Plaintiff claims were not disciplined as severely as similarly situated minority faculty members, such as himself. *Id.* ¶¶ 27, 47.  In 2011, Plaintiff met with FIT's director of human resources, the cochair of FIT's diversity council, and a representative from faculty services, to discuss his frustration, but they declined to investigate and generally represented to him that race was not the determinative factor in any of Federici, and FIT's, decisions. ¶¶ 48-50.

In May 2012, after receiving a master's degree, Plaintiff again met with Federici to discuss obtaining a full-time position. *Id.* ¶ 51-52.  Plaintiff claims Federici told him that he was still not qualified for such a position and would never be qualified for one. *Id.* ¶ 52.  In Spring of 2012, Plaintiff met with FIT's dean of business and technology, who represented that Plaintiff might consider finding another job outside of Federici's department. *Id.* ¶ 52-54.  When Plaintiff met with FIT's President, she also told him "race [wasn't] the issue." *Id.* ¶ 63.

5

At the end of 2012, Plaintiff was given only three teaching hours per week in FIT's educational opportunities program, a program for socially and economically disadvantaged students. *Id.* ¶¶ 55, 95. Plaintiff claims that Aaron Schorr, a purportedly less-qualified (but full-time) professor, and a Caucasian, was assigned the hours Plaintiff would otherwise have received. *Id.* ¶¶ 55-56. Plaintiff further claims that, when he spoke to Taur Orange, who was then in charge of assigning such hours, she said he would receive a larger course load the next time, and noted that she agreed Plaintiff was being treated unfairly by Federici. *Id.* ¶ 57.

On April 11, 2013, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 61. On July 1, 2013, educational opportunities program course allocations were made, and, again, Plaintiff was not assigned additional courses. *Id.* ¶ 62. Additionally, in Spring of 2013, a consulting firm tasked with conducting a climate report at FIT concluded that " 'racial tension' in the environment posed an 'opportunity for improvement.'" *Id.* ¶ 59.

### 2. The Prior Decision of Judge Torres

On February 2, 2015, the defendants against whom the Complaint was then-alleged (including FIT and Federici, but not Welt) moved to dismiss for failure to state a claim. *See* Dkt. No. 18. On February 26, 2016, Judge Analisa Torres, to whom the case was then assigned, granted that motion. *See Rogers*, 2016 WL 889590, at *1. The Court assumes familiarity with that opinion, and describes it only briefly as follows.

Judge Torres began by analyzing the Plaintiff's Title VII allegations, asserting disparate treatment, retaliation, and hostile work environment claims. *See id.* at *3. After dismissing the claims alleged against the individual Defendants, *see id.* (citing *Patterson v. Cty. Of Oneida,*

*New York*, 375 F.3d 206, 221 (2d Cir. 2004) (holding that individual defendants may not be held

liable under Title VII)), Judge Torres dismissed the bulk of Plaintiff's claims for discrete acts of

discrimination and retaliation as untimely, *see id.* at *3-4 (holding that "discrete acts of

discrimination that occurred before June 15, 2012, 300 days prior to the [EEOC] filing date,

[were] not actionable" under Title VII); *id.* (holding that Title VII's "continuing violation

doctrine" did not operate to save these claims, though it was applicable to Plaintiff's hostile work

environment claim). As to the three timely discrete claims of discrimination or retaliation the

Complaint asserted against FIT under Title VII, Judge Torres found that the Complaint did not

state a claim as to any of these three acts. In particular, as to the Plaintiff's claim that he had

been denied courses in FIT's educational opportunities program in 2012 and 2013 on account of

his race, or in retaliation for his filing of his EEOC complaint, Judge Torres noted that the

Plaintiff had failed to sufficiently allege that a similarly situated non-African American professor

received such assignments, that the person Plaintiff alleged to be in charge of such class

assignments, Ms. Orange, had been "sympathetic to his grievances" regarding Federici, and that

the Plaintiff had not "plausibly alleged a causal connection between [his complaints regarding

discriminatory practices to members of FIT's administration or his filing of an EEOC charge]"

and the class assignments in question. *Id.* at *6-7.

Turning to Plaintiff's hostile work environment claim under Title VII, Judge Torres held

that "[c]onsidering the totality of the circumstances, . . . Plaintiff ha[d] not plausibly alleged facts

sufficient to 'support a finding of hostile work environment that is so severe or pervasive as to

have altered the conditions of [his] employment.'" *Id.* at *8 (quoting *Littlejohn v. City of New

York*, 795 F.3d 297, 321 (2d Cir. 2015)). Finally, analyzing the Plaintiff's Section 1981 claim,

Judge Torres held that, although such claims could be maintained against individuals (rather than

simply against FIT), and although the limitations period was longer (and thus acts that occurred

after August 8, 2010 could be considered under Section 1981), the Plaintiff had not plausibly

alleged any timely claim for discrimination, retaliation, or hostile work environment under that

section. *See id.* at \*9-10. Having found that the Plaintiff's Complaint failed to state a claim

under federal law, Judge Torres declined to exercise supplemental jurisdiction over the

Plaintiff's state law and city law claims, and dismissed the Complaint without prejudice to

amend. *See id.* at \*10.

## B. The Amended Complaint[3]

On June 23, 2016, the Plaintiff filed his Amended Complaint, naming three Defendants:

FIT, Federici, and Henry Welt, the acting chair of FIT's entrepreneurship department. Am.

Compl. ¶ 11. The Amended Complaint incorporates essentially all of the allegations in the

original Complaint. *See* Am. Compl. ¶¶ 1-66. It also includes a number of additional allegations

as follows:

First, the Plaintiff adds details to bolster his claim that the production management

department, under Federici, was home to racial discrimination. According to Plaintiff, he is the

---

[3] In his opposition to the Defendants' motion to dismiss the Amended Complaint, the Plaintiff attached over 200 pages of exhibits and other materials, including purported transcriptions of conversations he had with individuals named in the Amended Complaint (including Federici), copies of student evaluations referenced in the Amended Complaint, articles in magazines written about Plaintiff, and class schedules. *See generally* Dkt. No. 58. The Defendants argue in their reply that the Court should not consider any of this material, as "a plaintiff cannot oppose a motion to dismiss by asserting new allegations or introducing documents not referenced in his complaint." Reply at 2.

Contrary to the Defendants' position, courts in this circuit regularly consider new factual allegations in opposition briefs by pro se plaintiffs, *see, e.g.*, *Rosario v. N.Y. City Dep't of Homeless Servs.*, No. 06 CIV. 7197 (PAC) (GWG), 2008 WL 449675, at \*3 n.1 (S.D.N.Y. Feb. 19, 2008), *report and recommendation adopted*, No. 06 CIV. 7197 (PAC) (GWG), 2008 WL 763003 (S.D.N.Y. Mar. 20, 2008), and Judge Torres, in assessing the sufficiency of the Plaintiff's first complaint, held that it was permissible to consider such materials, *see Rogers*, 2016 WL 889590, at \*1 n.1. Nevertheless, the materials the Plaintiff attaches go well beyond simply including additional factual allegations in his opposition, and the Court does not consider these materials in deciding this motion.

only African American faculty member to ever be permitted to teach a course on the "production" side of the department (in contrast to the computer side). *Id.* ¶ 72. Further, he claims that he taught that course only once – before Federici told him he could not teach it again. *Id.* Additionally, the Plaintiff adds further detail as to the 2006 letter Joyce Early, an African-American full time faculty member in the production management department, sent to the President of FIT addressing racism in the production management department. According to Plaintiff, she did not merely complain of racial animus generally, but also specifically cited Plaintiff as "a victim of Defendant Federici's discriminatory practices." *Id.* ¶ 117.

Second, the Plaintiff provides more detail as to a number of claims already alleged, including adding more specifics as to the individuals Plaintiff claims received opportunities he was denied. For instance, as to his claim that he was passed up in Spring 2007 for a full time position at FIT, Plaintiff now claims that the position went to a Caucasian candidate with no prior experience in production management. *See id.* ¶ 122. The Plaintiff also provides additional details as to FIT's failure to assign Plaintiff classes in the educational opportunities program in 2013, and adds an allegation that he was removed from that program altogether in 2014. *Id.* ¶ 95. According to Plaintiff, he had successfully taught in the educational opportunities program for eight years prior to his classes being transferred, in 2013, to a white, full-time faculty member. *Id.* Further, though Ms. Orange was the director of the program, Plaintiff now claims that Federici gained more influence over class selection at the educational opportunities program beginning in 2013. *See id.* ¶¶ 95-97. Plaintiff also claims that he was uniquely qualified to work in and lead the program, as he had repeatedly created programming for the low-income and minority students who participated in it, including creating a computer literacy club. *Id.* ¶ 132.

As to the white instructor who received the courses in lieu of Plaintiff, Plaintiff now claims that that instructor "routinely received low [student] evaluations." *Id.* ¶ 128.

Third, the Plaintiff adds other new allegations of disparate treatment. According to Plaintiff, in summer of 2012, he was prevented from selecting a particular class to teach, MG 153, by Federici, on the basis that Plaintiff had "dropped a class too late" the previous semester, in violation of department rules. *Id.* ¶ 86. The Plaintiff claims that, under the collective bargaining agreement between FIT and Plaintiff's union, he had the right to present his explanation for dropping the class to FIT administrators, but that Federici unilaterally penalized him in violation of that agreement. *Id.* ¶ 90. Plaintiff also asserts that his reason for dropping the class was that he was offered a course to teach in the entrepreneurship department, EP 441, and that he took the opportunity "hoping to escape the racism that he encountered in the Production Management Dept (sic)." *Id.* ¶ 88. In Fall 2014, the Plaintiff claims that Federici prevented him from selecting a different class, MG 253. *Id.* ¶ 99. According to Plaintiff, he had extensive professional qualifications to teach the class and had received superlative student evaluations when teaching similar subject matter. *Id.* ¶ 100. However, Federici purportedly gave the class to Regina Yoo, a non-African American adjunct faculty member, who was more junior than Plaintiff. *Id.* ¶ 119.

Fourth, the Plaintiff makes new allegations that he was discriminated against not only in FIT's production management department, but also in the entrepreneurship department. In December 2012, Plaintiff claims that Henry Welt, as well as FIT's Tenure and Promotion Committee, voted together to deny Plaintiff the ability to teach a "Capstone Business" course. *Id.* ¶ 94. The Plaintiff asserts that he created the class, and, under the collective bargaining agreement, thus had the right to teach it. *Id.* Plaintiff claims that after Welt met with FIT

10

administrators and communicated that Plaintiff had taken students he previously taught in an

entrepreneurship class to a strip club, Plaintiff was not allowed to teach the class. *Id.* ¶ 94.  In his

opposition to the motion to dismiss, Plaintiff further clarifies that this accusation was a

fabrication, and that "Welt made Plaintiff the scapegoat for the Entrepreneurship program after

[Welt] incompetently decided that his business students did not require a business plan although

students had registered for the course with the understanding that they would produce a Business

Plan." Dkt. No. 58, Ex. 1, 10.  The Plaintiff further claims that he authored a different

entrepreneurship program, EP 321, which he was also not permitted to teach, and that Chris

Helms, a Caucasian faculty member, ultimately taught it.  Am. Compl. ¶ 109.

Finally, the Plaintiff claims that, in September 2015, he was passed up for a temporary

full time position by Federici, in favor of Jacqueline Polite, another adjunct professor, and an

African American. *See id.* ¶ 138; Dkt. No. 58, Ex. 1, at 10.  Plaintiff alleges that Federici failed

to provide him with a sufficient opportunity to be considered for the position, in violation of the

collective bargaining agreement.  Dkt. No. 58, Ex. 1, at 10.  He further claims that, in January

2015, he complained to his union about Federici violating his class selection rights under the

collective bargaining agreement, and that Federici's hiring of Polite, eight months later, was in

retaliation for this complaint. *See* Dkt. No. 58, Ex. 1, at 14.

## II.    Discussion

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  Though this

standard applies to *pro se* litigants, a Court nevertheless must "liberally construe pleadings and

briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments

they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal citation and quotation marks omitted).

In his Amended Complaint, as in his original Complaint, Plaintiff asserts Title VII claims for disparate treatment, retaliation, and hostile work environment, against all of the Defendants. *See* Am. Compl. at 31-44.[4]  He also asserts similar claims against all of the Defendants under Section 1981. *See id.*  Finally, he asserts disparate impact, retaliation, and hostile work environment claims under NYSHRL and NYCHRL. *See id.*

The Court begins with an analysis of the Federal claims, and then turns to the state law and city law claims.  The Court assumes familiarity with Judge Torres's prior opinion, which articulated the legal standards governing the Plaintiff's Title VII and Section 1981 claims, and cites additional legal propositions only as necessary. *See generally Rogers*, 2016 WL 889590.

## A. Title VII

As an initial matter, and as Judge Torres previously held, Plaintiff cannot assert Title VII claims against the individual Defendants. *See id.* at *3 (citing *Patterson*, 375 F.3d at 221). Thus, the Title VII claims as asserted against the individual Defendants are dismissed.

Turning to claims as asserted against FIT, the Defendants argue that the Plaintiff's Amended Complaint fails to state a claim for relief under Title VII as, first, many of his claims remain time-barred, second, he has not added sufficient allegations to state a hostile work environment claim, and third, any new, timely allegations Plaintiff has added to the Amended Complaint do not state a claim for discrimination or retaliation. *See generally* Mot. to Dism.  The Court addresses each argument in turn.

---

[4] As the Plaintiff's paragraph numbering is inconsistent and non-linear in this section of his Amended Complaint, the Court cites to the page numbers.

### 1. Timeliness

First, the Court agrees with the Defendants that the majority of the discrete acts of disparate treatment and retaliation that Plaintiff alleges under Title VII are outside of the relevant limitations period. *See Id.* at 7. In dismissing the Plaintiff's original complaint, Judge Torres held that allegations of discrete acts of disparate treatment or retaliation that occurred before June 15, 2012, are not actionable in this case under Title VII. *See Rogers*, 2016 WL 889590, at *4 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'")). The Plaintiff has made no argument – nor could he – to alter the contours of that ruling.

### 2. Hostile Work Environment

Second, the Court agrees that the Amended Complaint fails to state a claim for a "hostile work environment claim" under Title VII. Nothing in the Amended Complaint provides any reason to depart from Judge Torres's earlier holding. *See id.* at *8.

### 3. Timely Claims of Discrimination and Retaliation

Turning to the Plaintiff's claims of discrimination and retaliation under Title VII, the Court finds that, although many of the timely, discrete acts of discrimination and retaliation the Plaintiff alleges in his Amended Complaint fail to state claims under Title VII, the Plaintiff has stated claims against FIT on the basis of a subset of these acts.

In his Amended Complaint, Plaintiff adds several allegations of discrete acts of discrimination and retaliation that the Defendants concede are timely under Title VII.  First, the Plaintiff alleges that, in December 2012, Welt, in concert with other individuals at FIT, denied Plaintiff the ability to teach an entrepreneurship course he had created.  *See* Am. Compl. ¶ 94. Second, he alleges that he was denied certain classes in the educational opportunities program in 2013 (a claim the Plaintiff made in the original Complaint) and that he was excluded from the program altogether in 2014 (a new claim).  *See id.* ¶¶ 95-97.  Third, the Plaintiff alleges that, in Summer 2012, he was prevented from selecting a particular class to teach, MG 153, by Federici, and that in Fall 2014, Federici prevented him from selecting a different class, MG 253.  *Id.* ¶ 99. Finally, the Plaintiff claims that, in September 2015, he was passed up for a temporary full time position by Federici, in favor of Jacqueline Polite, another adjunct professor, and an African American, as an act of retaliation for a complaint the Plaintiff made in January of 2015.  *See id.* ¶ 138; Dkt. No. 58, Ex. 1, at 10, 14.

The Defendants do not argue that any of the actions above fail to state claims on the basis that they do not constitute "adverse employment action[s]," a requirement for a Plaintiff to successfully plead a Title VII violation.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).  The Court thus analyzes each act to determine whether it states a claim for discrimination or retaliation under Title VII.

### a.  The December 2012 Entrepreneurship Course

First, the Court agrees with the Defendants that Plaintiff has not alleged a Title VII claim arising out of any of the actions taken by Welt, specifically, or the entrepreneurship department, generally.  The Amended Complaint contains virtually no allegations suggesting Plaintiff was denied any opportunities in Welt's department on account of race.  Instead, in his opposition, the

14

Plaintiff attributes Welt's treatment of him to race-neutral motivations, alleging that "Welt made Plaintiff the scapegoat for the Entrepreneurship program after [Welt] incompetently decided that his business students did not require a business plan although students had registered for the course with the understanding that they would produce a Business Plan." Dkt. No. 58, Ex. 1, at 10.  Whether or not Welt acted fairly, such allegations do not suggest that FIT, or Welt's, actions related to a protected characteristic or activity under Title VII. *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("[M]any bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.").  Nor do allegations that the Defendants violated a collective bargaining agreement in failing to assign Plaintiff classes alter that determination. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49–50 (1974) ("In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement.  By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress.  The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.").  The Title VII claims asserted against FIT on the basis of Welt's actions are dismissed.

   b. **The 2013 and 2014 Removal of Plaintiff from Educational Opportunities Program Coursework, and the 2012 and 2014 Determinations of Federici that Plaintiff Could not Teach Particular Courses in the Production Management Department**

   In contrast to the Plaintiff's Title VII claims against FIT on the basis of Welt's conduct, the Court finds that the Amended Complaint plausibly states claims for disparate treatment and retaliation under Title VII based on the Plaintiff's purported loss of classes in 2012, 2013, and 2014 as a result of Federici's alleged racial and retaliatory animus.

15

First, as to each of these claims of discrete acts of discrimination and retaliation, it is significant that Federici – and not another administrator at FIT – is alleged to be responsible. In dismissing the Plaintiff's original Complaint for failure to state a claim, Judge Torres had before her no timely, discrete acts of alleged discrimination or retaliation purportedly attributable to Mario Federici. Indeed, in finding that the Plaintiff's allegations of discrimination in the allocation of class hours in 2012 and 2013 failed to state a claim under Title VII, Judge Torres emphasized, *inter alia*, that Ms. Orange, the purported architect of those assignments, had been "sympathetic to [Plaintiff's] grievances." *Rogers*, 2016 WL 889590, at *6.

In contrast, the Plaintiff now alleges that Federici, not simply Ms. Orange, was responsible for his class assignments in 2012, 2013, and 2014. *See, e.g., id.* ¶¶ 95-97. Though the Amended Complaint may be largely devoid of allegations that Welt, Ms. Orange, or others discriminated against the Plaintiff on the basis of race, the Amended Complaint alleges repeated acts of discrimination by Federici, including acts of racial discrimination dating back to 2003. *See, e.g.,* Am. Compl. ¶¶ 29-32. Further, although there are no allegations that Plaintiff complained of racially discriminatory practices by specific administrators other than Federici, the Amended Complaint alleges that the Plaintiff has complained to administrators of Federici's purported racial animus since as early as 2008. *Id.* ¶¶ 47, 63. To make these allegations plausible, the Amended Complaint also includes allegations that Federici has discriminated against African Americans, generally, in the production management department, *see, e.g., id.* ¶¶ 72, 117 (alleging racial disparities in Federici's department); *id.* ¶ 117 (alleging that another African American faculty member wrote a letter complaining of racial hiring practices by Federici, and specifically complaining that Federici had discriminated against Plaintiff), and that Federici has repeatedly passed Plaintiff over for employment opportunities in favor of less

16

qualified, similarly situated white candidates, or otherwise treated him differently from such

candidates, *see id.* ¶ 32 (alleging that similarly situated white candidates were not placed on

probation); *id.* ¶ 33 (claiming that plaintiff was passed over for a full-time job in favor of a white

applicant who lacked a credential Plaintiff alleges was a listed requirement for the position); *id.* ¶

122 (claiming that Plaintiff was passed over in 2007 for a full time job in favor of a Caucasian

candidate with no experience in production management).   Though most of these discrete acts of

alleged discrimination and retaliation the Plaintiff attributes to Federici are time-barred under

Title VII, they provide significant "background evidence in support of [Plaintiff's] timely

claim[s]." *Rogers*, 2016 WL 889590, at \*4 n.4 (quoting *Morgan*, 536 U.S. at 113).  On a motion

to dismiss, the Court accepts these allegations as true.   *Carter,* 822 F.3d at 52.

Assessed in concert with this background evidence, although the Plaintiff's specific

allegations as to the 2012, 2013, and 2014 class assignments are sparse, they are not so

conclusory as to fail to state a claim.  As to these claims, the Plaintiff provides adequate detail

comparing himself to non-African American colleagues who he claims received the courses he

was denied.  *See* Am. Compl. ¶ 128 (explaining why Plaintiff believed a particular white

professor was not more qualified than the Plaintiff to lead the educational opportunities

program); *id.* ¶ 119 (explaining why Plaintiff believed a non-African American professor, more

junior than he, was not more qualified to teach a particular course in Fall of 2014); *id.* ¶ 132

(laying out a case for Plaintiff's qualifications to lead the educational opportunities program); *id.*

¶ 100 (laying out a case for his qualifications to teach the 2014 class).   In particular, Plaintiff

includes new allegations responsive to Judge Torres's earlier holding: First, he provides an

explanation for why he believes he was as or more qualified than a Caucasian professor to whom

Plaintiff's 2012 and 2013 class hours were assigned, alleging that Plaintiff's extensive

experience in the educational opportunities program made him the most qualified candidate, and

that the Caucasian candidate who received the position, although a full-time professor, routinely

received low student evaluations. *See* Am. Compl. ¶¶ 128-35; *compare Rogers*, 2016 WL

889590, at *6 (finding Plaintiff had failed to supply "sufficient factual allegations related to this

faculty member's qualifications and professional standing" to demonstrate Plaintiff was similarly

situated). Plaintiff also alleges that, as to the 2014 class assignment, he was passed up in favor

of an adjunct faculty member who lacked his qualifications. Am. Compl. ¶ 119; *compare*

*Rogers*, 2016 WL 889590, at *6 (noting that one reason Plaintiff failed to plausibly allege a

claim was that he compared himself to a full-time, rather than adjunct, professor).

Defendant, FIT, may well be able to provide race- and retaliation-neutral explanations for

each employment decision. Nevertheless, viewing these allegations of discrete acts of

discrimination and retaliation in light of the overall allegations against Federici in the Amended

Complaint, it cannot be said that the Amended Complaint, as to the purported denial of classes in

2012, 2013, and 2014, fails to "give plausible support to a minimal inference of discriminatory

motivation." *Littlejohn*, 795 F.3d at 311.

### c.  The Temporary Full Time Position in 2015

The Court agrees with the Defendants that the Plaintiff has not plausibly alleged a Title

VII claim on the basis that Federici passed him up for a temporary full time position in 2015 in

favor of Jacqueline Polite. As an initial matter, the Plaintiff does not allege that this action was

taken on account of his race, but rather in retaliation for his complaints about Federici. *See* Dkt.

No. 58, Ex. 1, at 14. Nor do any allegations in the Amended Complaint make it plausible that

Federici hired Polite, an African American junior faculty member, in lieu of Plaintiff, on account

of Plaintiff's race.

As to retaliation, the Plaintiff alleges, in his opposition, that in January 2015 he complained to his union about Federici violating his class selection rights under the collective bargaining agreement, and that Federici's hiring of Polite, eight months later, was in retaliation for this complaint. *See id.* These allegations do not state a claim of retaliation under Title VII for two reasons. First, the mere temporal proximity of Plaintiff's complaint and Federici's decision is insufficient to make it plausible that one caused the other. As Judge Torres previously observed, "[t]he passage of even two or three months," let alone eight, "is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged." *Rogers*, 2016 WL 889590, at *7 (quoting *Williams v. City of N.Y.*, 11 Civ. 9679 (CM), 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012)). Nevertheless, even were this temporal proximity sufficient, the Plaintiff nowhere alleges that, in complaining to his union about Federici in January 2015, he complained of racial discrimination, rather than mere violations of the collective bargaining agreement. *See* Dkt. No. 58, Ex. 1, at 14. To state a claim for retaliation, a Plaintiff must show that he "participated in a 'protected activity' under the retaliation provisions of Title VII." *Littlejohn*, 795 F.3d at 316. As already noted, violations of a collective bargaining agreement, or unjust actions by bosses, are not made illegal by Title VII. *See Alfano*, 294 F.3d at 377; *Alexander*, 415 U.S. at 49–50.

### 4. Title VII Conclusion

The Court finds that the Plaintiff has sufficiently alleged that the Defendant, FIT, denied Plaintiff certain class assignments in 2012, 2013, and 2014, on the basis of discriminatory and retaliatory animus. The Court dismisses all of the Plaintiff's additional claims under Title VII against all of the Defendants.

### B. Section 1981

The Court's analysis is largely the same under Section 1981, though Section 1981, unlike Title VII, does allow for individual liability. *See Rogers*, 2016 WL 889590, at \*9 (citing *Patterson,* 375 F.3d at 229).

In dismissing the Plaintiff's original Complaint, Judge Torres held that, under Section 1981, only acts alleged to have occurred after August 8, 2010, are actionable. *Id.* Beyond the acts described above in this Court's Title VII analysis, the Plaintiff does not allege any additional timely and viable claims in his Amended Complaint for purposes of a Section 1981 claim. Thus, the Court finds that the Plaintiff has sufficiently alleged claims under Section 1981 for disparate treatment and retaliation arising out of the 2012, 2013, and 2014 course assignments, against FIT and Defendant Federici. However, the Plaintiff has not plausibly alleged any claims under Section 1981 against Defendant Welt. *See Patterson*, 375 F.3d at 229 ("[T]o make out a claim for individual liability under [Section 1981], a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." (internal quotation marks omitted)).

## C. State Law claims

After dismissing the Plaintiff's federal claims, Judge Torres declined to exercise supplemental jurisdiction over his NYSHRL and NYCHRL claims. *See Rogers*, 2016 WL 889590, at \*10. As the Plaintiff states Title VII and Section 1981 claims against two of the Defendants – FIT and Federici – this Court has no basis to decline such jurisdiction, and must assess the sufficiency of these claims.

### 1.  NYSHRL

In their two briefs, the Defendants make no particularized arguments why either Plaintiff's NYSHRL or NYCHRL claims should be dismissed. *See* Mot. to Dism. at 11-12; *see generally* Reply. This silence is irrelevant as to Plaintiff's NYSHRL claims, as the legal standards governing those claims are the same as those governing Title VII, though the NYSHRL does allow for individual liability. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.,* 716 F.3d 10, 14 (2d Cir. 2013); *see also Taylor v. City of N.Y.,* No. 15-CV-7454 (RA), 2016 WL 4768829, at *5 (S.D.N.Y. Sept. 13, 2016) (noting that the continuing violation doctrine is the same in the context of Title VII and NYSHRL). Further, the statute of limitations for a NYSHRL claim is three years. *See Taylor*, 2016 WL 4768829, at *5.[5] Thus, the Court finds that the Plaintiff has plausibly alleged claims under the NYSHRL against Defendants FIT and Federici arising out of the 2012, 2013, and 2014 class assignments discussed above. All other claims, including those against Welt, are dismissed.

## 2. NYCHRL

Although the Defendants' silence is irrelevant as to the NYSHRL claims, it is problematic as to the NYCHRL claims. That is because, while the standards governing a NYSHRL claim are largely contiguous with those governing a Title VII claim, the same is not true for the NYCHRL. "[I]nterpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall." *Ya-Chen Chen v. City Univ. of N.Y.,* 805 F.3d 59, 75 (2d Cir. 2015)

---

[5] The Second Circuit has not yet determined whether "the filing of a charge with the EEOC serves to automatically toll the statute of limitations on claims asserted under the NYSHRL and NYCHRL." *Taylor*, 2016 WL 4768829, at *5 (quoting *Esposito v. Deutsche Bank AG*, No. 07–CV–6722 (RJS), 2008 WL 5233590, at *5 (S.D.N.Y. Dec. 16, 2008)). Nevertheless, numerous courts in this circuit have held that the filing of an EEOC charge indeed tolls the limitations period. *See Esposito*, 2008 WL 5233590, at *5 (collecting cases). The Court thus finds that acts committed on or after April 11, 2010 (three years before the Plaintiff filed his EEOC charge) are timely as to the Plaintiff's state and city claims – though the difference between this date and August 8, 2011 (three years before the filing of the Complaint) is immaterial in this case.

(quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,* 715 F.3d 102, 109 (2d Cir. 2013)).

Unlike federal and state law, "[t]he NYCHRL should 'be construed liberally for the

accomplishment of the uniquely broad and remedial purposes thereof.'" *Id.* (quoting *Mihalik,*

715 F.3d at 109); *see also Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 884-85 (2013).

In light of these distinctions, "courts must analyze NYCHRL claims separately and

independently from any federal and state law claims, construing [the law's] provisions broadly in

favor of discrimination plaintiffs to the extent that such a construction is reasonably possible."

*Id.* (quoting *Mihalik,* 715 F.3d at 109).

The Defendants make no attempt to address this more liberal standard, or to explain why any

of the alleged acts of discrimination, retaliation, or hostile work environment in the Amended

Complaint fail to plausibly state claims under NYCHRL.  Although the Court addresses these

claims briefly, it declines to sua sponte dismiss claims that are not obviously insufficient in the

absence of specific arguments from the Defendants that such dismissal is warranted.

### a.  Timeliness

First, the Court addresses the timeliness of the Plaintiff's allegations under the NYCHRL.

Judge Torres found the majority of Plaintiff's allegations of discrimination and retaliation under

federal law time-barred, citing to both Section 1981's statute of limitations and, as to Title VII,

to the Supreme Court's 2002 decision in *Morgan* narrowing the continuing violations doctrine

under Title VII.  *See Rogers*, 2016 WL 889590, at *3-4, *9 (citing *Morgan*, 536 U.S. at 110-11).

Although, as *Morgan* holds, the continuing violations doctrine is not available under Title VII or

NYSHRL to save Plaintiff's untimely claims for discrimination and retaliation, New York courts

have held that the doctrine applies to discrete acts of discrimination and retaliation under the

NYCHRL.  *See Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 35 (N.Y. App. Div. 1st

Dep't 2009) (holding that, because the law was written before *Morgan*, it did not incorporate
*Morgan*'s narrower understanding of the continuing violations doctrine).  Under the NYCHRL,
"[t]ime-barred discrete acts can be considered timely 'where specific and related instances of
discrimination are permitted by the employer to continue unremedied for so long as to amount to
a discriminatory policy or practice.'"  *Dimitracopoulos v. City of N.Y.*, 26 F. Supp. 3d 200, 212
(E.D.N.Y. 2014) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)); *accord*
*Taylor*, 2016 WL 4768829, at *5.

 Applying this standard to Plaintiff's claims, he has plausibly alleged an "unremedied …
discriminatory policy or practice" dating back to 2003.  *Fitzgerald*, 251 F.3d at 359 (quoting
*Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)); *see also Taylor*, 2016 WL 4768829, at
*6 (finding that, "[u]nder [the NYCHRL's] more liberal [continuing violations] standard, [the
plaintiff's] claims that [her employer] repeatedly failed to hire her on account of her sex, race,
color, and national origin for the position of apprentice construction laborer amount[ed] to a
continuing violation, rendering the conduct outside the limitations period timely under the
NYCHRL").  Thus, at this stage of the proceedings, all of the various discrete acts of
discrimination and retaliation the Plaintiff alleges he experienced as a result of Federici's
decisions and practices are timely.

### b. Discrimination and Retaliation

 Turning to whether any of the Plaintiff's timely claims should be dismissed for failure to
state a claim, the Court notes, again, that the Defendants have made no particular arguments
construing the more liberal standards under NYCHRL and arguing that, under those provisions,
any of Plaintiff's claims should be dismissed.  Just as the statute of limitations is less restrictive,
so too are the requirements for stating a claim under the NYCHRL.  Thus, "[t]o state a claim for

discrimination under the NYCHRL, a plaintiff must only show differential treatment of any

degree based on a discriminatory motive." *Gorokhovsky v. N.Y. City Hous. Auth.*, 552 F. App'x

100, 102 (2d Cir. 2014) (summary order). "[T]he NYCHRL does not require either materially

adverse employment actions or severe and pervasive conduct." *Id.* (internal quotation marks

omitted).

Because the Defendants make no particularized argument as to any of the Plaintiff's

claims, the Court will, with few exceptions, not parse the Amended Complaint to dismiss claims

*sua sponte*. Further, the Court notes that it is clear that the Plaintiff has plausibly alleged various

acts of discrimination and retaliation on the part of Federici, including the 2012, 2013, and 2014

class assignments already discussed, as well as acts spanning the previous decade. *See, e.g.*, Am.

Compl. ¶ 33 (alleging that Plaintiff was passed up for a full-time position for which he applied).

The Court does hold, however, that Plaintiff's claims involving Defendant Welt and the

entrepreneurship department do not state a claim for discrimination or retaliation under the

NYCHRL, any more than they do under Title VII. Further, any such claims prior to April 11,

2010, would be time-barred, as there are no allegations that Plaintiff was subjected to a

discriminatory practice outside of the production management department. Additionally, the

Court holds that, as to the 2015 appointment of the Plaintiff's colleague, Ms. Polite, as a

temporary full-time instructor, the Plaintiff's allegations fail to state a claim under NYCHRL as

well as under federal law.

### c.  Hostile Work Environment

Finally, the Plaintiff also states a hostile work environment claim under the NYCHRL.

Under that legal framework, "[h]ostile work environment claims are analyzed under the same

provision . . . as discrimination claims." *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 261

(E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (citing *Williams,* 872 N.Y.S.2d at 37).

Unlike in a hostile work environment claim under Title VII, "[u]nder the NYCHRL, defendants'

discriminatory conduct need not be 'severe or pervasive.'" *Id.* (citing *Williams*, 872 N.Y.S.2d at

39–41). Instead, questions of severity or pervasiveness go not to the viability of a claim, but to

the amount of damages. *See id.* (citing *Williams*, 872 N.Y.S.2d at 38). When assessing whether

a hostile work environment claim has been sufficiently alleged, "[t]he relevant consideration is

whether ... the plaintiff 'has been treated less well than other employees' because of [*inter alia*,

his] race." *Id.* (quoting *Williams*, 872 N.Y.S.2d at 39).

Because the Plaintiff has plausibly alleged that Federici and FIT discriminated against

him under the NYCHRL by refusing to consider him for a full-time position, limiting his class

assignments, and otherwise treating him differently based on his race, the Plaintiff has also

alleged a claim for hostile work environment as to conduct he experienced in the production

management department. That is so notwithstanding that the Plaintiff has not plausibly alleged a

hostile work environment claim under federal or state law. *See Lenart v. Coach Inc.*, 131 F.

Supp. 3d 61, 69 (S.D.N.Y. 2015) (holding that, though a plaintiff had failed to plausibly allege a

hostile work environment claim under federal law, she had plausibly done so under the

NYCHRL).

### III.   Conclusion

In conclusion, the Motion to Dismiss is DENIED in part and GRANTED in part, as

consistent with this Order. In particular, the Court dismisses all claims as against Defendant

Welt. As to the federal claims, the Court dismisses all of the Plaintiff's Title VII claims against

Defendant Federici. The Court finds, however, that the Plaintiff has stated claims under Title

VII for discrimination and retaliation against FIT on the basis of the denial of certain class

assignments to Plaintiff in 2012, 2013, and 2014.  The Amended Complaint also states claims arising from these same discrete acts under Section 1981 and under NYSHRL against FIT and Federici.  Finally, the Plaintiff states claims under the NYCHRL against FIT and Federici for discrimination, retaliation, and hostile work environment.

This resolves Dkt. No. 50.

Judge Torres previously assigned this case to the magistrate judge for general pretrial management.  *See* Dkt. No. 6.  In light of the Court's present Order denying, in part, the motion to dismiss, the case may now proceed to discovery.

SO ORDERED

Dated: March ____, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge