UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Alvin Rogers,

               Plaintiff,

—v—

Fashion Institute of Technology and Mario Federici,

               Defendants.

14-cv-6420 (AJN)

OPINION & ORDER

ALISON J. NATHAN, United States District Judge:

Plaintiff Alvin Rogers brings this action against his employer the Fashion Institute of Technology and the Chairperson of the Product Management Department in which he worked, Mario Federici. Rogers asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law, all of which arise out of alleged discrimination on the basis of race.

Defendants move for summary judgment and, for the following reasons, the Court GRANTS Defendants' motion as to all federal claims, and DECLINES to exercise supplemental jurisdiction over the remaining NYSHRL and NYCHRL claims.

## I. PROCEDURAL BACKGROUND

Rogers filed his original Complaint in this action on August 8, 2014. Dkt. No. 1. On February 26, 2016, Judge Torres, to whom the case was then assigned, dismissed that Complaint without prejudice for failure to state a claim. *See generally Rogers v. Fashion Inst. of Tech.*, 2016 WL 889590 (S.D.N.Y. Feb. 26, 2016). On June 23, 2016, Rogers filed an Amended

1

Complaint, Dkt. No. 43, and Defendants moved again to dismiss that complaint on August 12, 2016, Dkt. No. 50. This Court issued a Memorandum and Order granting in part and denying in part that motion on March 21, 2017. Dkt. No. 70. In that Memorandum and Order, the Court considerably narrowed Rogers' federal claims, dismissing all Title VII and § 1981 claims with the exception of the discrimination and retaliation claims arising out of the denial of "certain class assignments in 2012, 2013, and 2014." *Rogers v. Fashion Inst. of Tech.*, 2017 WL 1078572, at *8–9 (S.D.N.Y. Mar. 21, 2017). On October 4, 2018, Defendants filed the motion for summary judgment that is currently before the Court. Dkt. No. 137.

## II. FACTUAL BACKGROUND[1]

This Opinion assumes familiarity with the general factual backgrounds articulated in the prior opinions in this matter and focuses its discussion of the facts on the incidents giving rise to the federal claims that survived the second motion to dismiss.

### A. 2012 Claims

In his Amended Complaint, Rogers, an adjunct faculty member at the Fashion Institute of Technology (FIT), alleged that he was denied the ability to teach a section of MG153, a class he had previously taught, in the spring of 2012. Am. Compl. ¶ 106. However, as he now admits, he taught three sections of MG153 that semester. Dkt. No. 185 ¶ 86. Rather, Rogers now alleges that he was denied a section of MG153 in the winterim, the session of classes between the fall and spring semester, of 2012. *See id.*; *see also* Dkt. No. 58-2 at 3. Prior to allegedly being

---

[1] Except as otherwise noted, the following facts are not in dispute and are taken from Rogers' Opposition to Defendants' 56.1 Statement. *See* Dkt. No. 185. Where Rogers fails "to actually dispute the factual material" contained in the "identified paragraphs" in Defendants' Rule 56.1 Statement, the Court "find[s] them undisputed" where supported by the record. *Leeber Realty LLC v. Trustco Bank*, 316 F. Supp. 3d 594, 600 (S.D.N.Y. 2018). The Court also denies Rogers' recent attempt to reopen discovery, which has now been closed for well over a year, and does not rely on anything in Dkt. No. 188 or responses thereto.

2

denied a winterim section of MG153, Rogers had dropped his fall 2012 section of MG153 subsequent to the deadline for dropping classes provided in the Collective Bargaining Agreement that governs the terms and conditions of employment at FIT. Dkt. No. 185 ¶¶ 2, 87. Section 21.1.6 of the Collective Bargaining Agreement provides, "An adjunct faculty member who drops a course after December 15th for the Spring semester or after July 1st for the fall semester, except for cause (personal illness, professional or personal obligations, military service, etc.), which shall be reviewed by the Chair and Dean and approved by the Vice President for Academic Affairs, shall be prevented from exercising their AOP rights for one year effective the semester directly following the one during which the course was dropped." Dkt. No. 143-1 at 25. The AOP list governs the selection of classes by full-time and adjunct faculty. Dkt. No. 185 ¶¶ 68–73. Though the parties dispute how the form requesting an exception to this rule was ultimately submitted and to whom, Rogers was denied an exception and dropped from the AOP list, which caused him to select courses last. Dkt. No. 185 ¶ 87. Rogers alleges that the reason he dropped his fall 2012 section was that Federici had told him he "would never be full time" in the Product Management Department at FIT and thus he wanted to search for "new opportunities" outside the department. Dkt. No. 185 ¶ 88.

**B. 2013 Claims**

Rogers' Amended Complaint also alleges that he was denied a "leadership course" in the Educational Opportunity Program summer program for incoming first-years at FIT in the summer of 2013 that ultimately went to a colleague who was "less qualified" for the position. Am. Compl. ¶¶ 56–57. However, as he now admits, there was no EOP leadership position for him to have been denied. Dkt. No. 185 ¶ 89. Rather, Rogers appears to be alleging that he was denied the opportunity to teach a new introductory course for incoming Product Management

3

students that was first offered in the Educational Opportunity Program in the summer of 2012. Dkt. No. 185 ¶ 112. In identifying an instructor for the course, Taur Orange, the director of the Educational Opportunity Program, asked Federici to recommend a faculty member to teach the course. *Id.* Federici recommended Aaron Schorr, a full-time faculty member in the Product Management Department who was promoted to full professor prior to Rogers being hired at FIT. *See* Dkt. 182. Schorr is the "go-to-guy" on technology, serves on technology committees at FIT, and has spent years assessing whether to bring new technologies into the classroom. Dkt. No. 185 ¶ 113. The parties dispute whether Federici himself hired Schorr for this position or whether Orange, the director of the program, hired him on Federici's recommendation as she attests. *See* Dkt. No. ¶ 185 112–114. However, Rogers contradicts *himself* in his responses to Defendants' Local Rule 56.1 Statement, describing Federici as having both "hired" and "recommended" Schorr for hire. *See id.* After Orange presented Rogers with his usual Educational Opportunity Program teaching schedule, which did not include the new course that Schorr was selected to teach, he opted out of continuing to teach in the program, stating that he had a scheduling conflict. Dkt. No. 143-2 at 297:13–19; Dkt. No. 185 ¶ 115.

**C. 2014 Claims**

Plaintiff did not teach MG253 in the spring of 2014, a class that he had tried to select in course selection but was either denied his selection by Federici in violation of the Collective Bargaining Agreement or had his qualifications to teach the class challenged pursuant to it. Dkt. No. 185 ¶ 90; *see also* Dkt. No. 143-1 at 47–48, § 21.2 (describing circumstances under which an AOP course selection may be denied). Rogers describes this as a unilateral violation of "his AOP rights," Dkt. No.185 ¶ 94, and submits an unverified transcript of a conversation between he and Federici in which Federici explained that the woman who ultimately taught the class that

4

semester had a background in the subject matter and voiced concerns about the need to give adjunct faculty "the opportunity to teach at least one class in the spring to hold them." Dkt. No. 58-1 at 19–23. After presenting his qualifications to the department following this denial, Rogers was permitted to teach the course, which he has taught since. Dkt. No. 143-2 at 196:14–197:11; Dkt. No. 185 ¶ 90; *see also* Am. Compl. ¶ 104.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that he is entitled to relief as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, when the burden of proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim. *Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). There is a genuine issue of material fact if a reasonable jury could decide in the non-moving party's favor. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000).

The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).

To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citation omitted).

Finally, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2006) (emphasis omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

Although "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions . . . Nonetheless, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (internal quotation marks and citations omitted); *see also Abdu-Brisson v. Delta Air*

*Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ROGERS' FEDERAL CLAIMS

### A. Discrimination Claims

As an initial matter, "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). The differences that do exist are inapplicable here, except that Federici, as an individual defendant, cannot be held liable under Title VII. *Id.* at 225-227 (explaining the differences).

Under Title VII, it is unlawful for an employer to intentionally discriminate against any individual on the basis of that individual's race. 42 U.S.C. § 20000e-2(a)(1). Claims of racial discrimination brought pursuant to Title VII are analyzed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walsh v. N.Y.C. Housing Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016). Under that framework, it is initially the plaintiff's burden to establish a *prima facie* case of race discrimination. *Id.* To do so, the plaintiff must demonstrate that "(1) []he was within the protected class; (2) []he was qualified for the position; (3) []he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009) (*abrogated on other grounds* by statute). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Bickerstaff v.*

*Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "The burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal." *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) (citation omitted). "Once a plaintiff has established a *prima facie* case, the burden of production shifts to the employer to rebut this presumption by articulating a legitimate, nondiscriminatory reason for its action." *Bickerstaff*, 196 F.3d at 446. This burden "also is not a demanding one; [defendant] need only offer such an explanation for the employment decision." *Id.* Still, the employer's explanation must at least be "clear and specific." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (citations omitted).

If the employer articulates an explanation, the "presumption of discrimination is eliminated, and 'the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Sattar v. Johnson*, 129 F. Supp. 3d 123, 137 (S.D.N.Y. 2015) (ellipsis in original) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)). Specifically, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (citation omitted); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) (recognizing that Congress has explicitly authorized Title VII discrimination claims "in which an improper consideration was 'a motivating factor' for an adverse employment decision") (citing 42 U.S.C. § 2000e-2(m)). Such evidence may include, for example, a demonstration "that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

8

discrimination.'" *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Burdine*, 450 U.S. at 253).

Notwithstanding the burden-shifting of the *McDonnell Douglas* framework, the plaintiff retains at all times "[t]he ultimate burden of persuading the trier of fact *that the defendant intentionally discriminated against*" her. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (emphasis added) (quoting *Burdine*, 450 U.S. at 253). As such, "it is not sufficient for the fact-finder to disbelieve the employer's explanation; rather, 'the fact-finder must believe the plaintiff's explanation of intentional discrimination.'" *Sattar*, 129 F. Supp. 3d at 137–38 (additional internal quotations marks omitted) (quoting *Reeves*, 530 U.S. at 147); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ("[P]laintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.") (internal quotation marks and brackets omitted); *Bickerstaff*, 196 F.3d at 446–47 ("[P]laintiff's opportunity to demonstrate that the employer's proffered reason was false . . . merges with her ultimate burden to persuade the trier of fact that she has been the victim of intentional discrimination," and a showing "that the proffered reason was false" constitutes "one means to support [the plaintiff's] ultimate burden of proving discrimination.").

### 1. Rogers Fails to Establish a *Prima Facie* Case of Discrimination with respect to the 2012 and 2013 Claims

While the burden of making the *prima facie* showing of discrimination is *de minimis*, Rogers has pointed to no facts suggesting that the adverse employment actions taken against him with respect to the denial of classes in 2012 and 2013 were related to his race. An inference of

discrimination may arise based on invidious comments about people in the protected class, or more favorable treatment of employees outside of the protected class. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). Accordingly, Rogers may satisfy his burden on the fourth element of the *prima facie* test by showing that he was "similarly situated in all material respects" to other individuals against whom he would have the court compare him. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

As an initial matter, Rogers cannot establish an inference of discrimination based on invidious comments with respect to *any* of his claims because he has admitted that no one at FIT has said anything derogatory about his race. *See* Dkt. No. 185 ¶ 10. Though he clarifies that his claims center on perceived systemic racism at FIT and the underrepresentation of black faculty in various positions within the university, these allegations alone (which are only supported by statistics of unknown origin, presumably compiled by Rogers himself) do not establish an inference of discrimination.

Rogers also cannot establish an inference of discrimination with respect to his 2012 and 2013 claims because he fails to offer a comparator to whom he is similarly situated and who received more favorable treatment than he did. With respect to the alleged denial of MG153 in winterim 2012, Rogers does not point to any evidence of non-black adjunct faculty who dropped classes after the date prescribed in the Collective Bargaining Agreement and nonetheless had their exceptions granted and were permitted to continue selecting courses pursuant to the AOP list. With respect to the alleged denial of the opportunity to teach the class newly added to the Educational Opportunities Program in 2012, Rogers fails to establish that he and Aaron Schorr, to whom the class was ultimately assigned, were similarly situated. Aaron Schorr is a full-time faculty member in the Product Management Department, who was promoted to full professor

prior to Rogers being hired at FIT and was selected over him to teach an introductory course to incoming Product Management students. *See* Dkt. 182; Dkt. No. 185 ¶ 113. Rogers cannot, as a matter of law, establish that he—an adjunct faculty member who had at that point been a member of the Product Management Department for far less time—was similarly situated to Schorr with respect to the opportunity to teach incoming students an introductory Product Management course.

Because Rogers proffers no evidence—either of invidious comments or of a comparison establishing disparate treatment—that supports an inference of discriminatory intent, he cannot prevail on his 2012 and 2013 discrimination claims.

### 2. Rogers Fails to Rebut FIT's Non-Discriminatory Reasons as Pretextual with respect to the 2014 Claims

Even assuming Rogers has established a *prima facie* case of discrimination with respect to his 2014 claims, he still would not prevail on those claims. After a plaintiff demonstrates a *prima facie* case of discrimination, the burden shifts to the defendants to "articulate some legitimate, nondiscriminatory reason for its action," although it "need not persuade the court that it was actually motivated by the proffered reason." *Delaney*, 766 F.3d at 168 (internal quotation marks omitted). If the defendant makes this showing, the presumption of discrimination is rebutted, and the burden then shifts back to the plaintiff to show "that a reasonable jury could conclude that the employer's determination was in fact the result of discrimination." *Ghent v. Moore*, 324 F. App'x 55, 56 (2d Cir. 2009) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008)). Rogers' 2014 claims fail because he cannot provide sufficient evidence to support a finding by a reasonable jury that Defendants' proffered non-discriminatory reasons for the denial of the 2014 course were pretext for discrimination.

Defendants have met their burden to present a legitimate, nondiscriminatory reason for any denial of classes in 2014. They point to evidence offered by Rogers himself that demonstrates that, to the extent Federici denied Rogers his selection of MG253 in the spring of 2014 in favor of a more junior adjunct faculty member, Federici did so because he believed she had a more extensive background in the subject matter covered in the course and because Federici was worried about his ability, as the Department Chairperson, to maintain good adjunct faculty members hired in the fall if he did not ensure they also had classes to teach in the spring. *See* Dkt. No. 58-1 at 19–23. Even assuming Federici violated Rogers' "AOP rights," and therefore the Collective Bargaining Agreement, in denying Rogers his class selection in favor of the more junior adjunct faculty member who ultimately taught the course, Defendants have demonstrated that Federici had legitimate, nondiscriminatory reasons for doing so.

When the burden shifts back to Rogers to show that a reasonable jury could find that the Defendants' proffered explanations are pretext for discrimination, he fails to meet his burden. The Second Circuit has explained that "there are two distinct ways for a plaintiff to prevail— either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving that the reasons given by the defendants are not true and that discrimination is the real reason for the actions." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (internal quotation marks omitted). Rogers must offer "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks and alterations omitted).

Rogers has failed to offer evidence beyond his own conjecture that Defendants' proffered explanations are mere pretext for the alleged discrimination he alleges is at the heart of the 2014 incident. *See Risco v. McHugh*, 868 F. Supp. 2d 75, 99 (S.D.N.Y. 2012) ("A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is . . . insufficient."). Accordingly, even drawing all inferences in Rogers' favor, no reasonable jury could conclude that Defendants acted with discriminatory animus in denying Rogers his section of MG253 in the spring of 2014.

For the foregoing reasons, all of Rogers' discrimination claims against FIT under Title VII and against FIT and Federici under Section 1981 fail as a matter of law.

**B. Rogers' Retaliation Claims**

As with the discrimination claims addressed above, federal retaliation claims are reviewed under the *McDonnell Douglas* burden-shifting framework. *See Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013).

In order to establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) (internal quotation marks and citation omitted). The plaintiff's burden of proof as to this first step "has been characterized as 'minimal' and '*de minimis*.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted).

Rogers' claims nonetheless fail to satisfy the third prong, as no reasonable jury could find that he was denied classes *because* he had complained of discrimination. To demonstrate this causal link, the "plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the

13

employer's adverse action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). That is, Rogers would have to show that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91.

It is Rogers' burden to establish his *prima facie* case, yet he offers no direct evidence—disputed or undisputed—suggesting that the denials of courses in 2012, 2013 and 2014 were related to his complaints of discrimination. Plaintiffs may also prove a causal connection by showing temporal proximity, i.e. that the protected activity was followed closely in time by adverse employment action. *See Vega*, 801 F.3d at 90-91; *Zann Kwan*, 737 F.3d at 846. However, in this case, Rogers alleges to have most recently made internal complaints about discrimination in November 2011 and to have filed an EEOC charge in April 2013. *See* Am. Compl. ¶ 48, 61. Both his 2012 and 2013 course denials predate his EEOC charge and post-date his prior alleged internal complaints by over a year. Furthermore, his 2014 course denial post-dates his EEOC charge by nearly one year and eight months. See Dkt. No. 185 ¶ 90 (stating that Rogers was denied his selection of MG253 in December 2014). Based on this undisputed timeline of events, no reasonable juror could find that Rogers would not have been denied classes in 2012, 2013, and 2014 but for his complaints of discrimination.

Accordingly, Defendants are entitled to summary judgment on Rogers' retaliation claims as a matter of law.

## V. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE AND LOCAL LAW CLAIMS

The Supreme Court has commented that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court finds no reason to deviate from that normal practice here. Because "the Court has not yet invested resources necessary to resolve [these] claims," and because "[t]he extensive discovery already taken is likely sufficient to enable [these] claims to be evaluated in state court without any additional discovery," *see Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 393 (S.D.N.Y. 2013), the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims and thus dismisses the claims without prejudice.

## VI. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion as to all federal claims, and DECLINES to exercise supplemental jurisdiction over the remaining NYSHRL and NYCHRL claims and dismisses them without prejudice. Accordingly, the Clerk of Court is respectfully directed to enter judgment and close the case. This order resolves Dkt. No. 137.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

A copy of this Opinion and Order will be mailed to Mr. Rogers and that mailing will be noted on the public docket.

SO ORDERED.

Dated: September 30, 2019
      New York, New York

                                              _____
                                              ALISON J. NATHAN
                                              United States District Judge